Paul N. Tranel
Emily Guiterrez Caton
Bohyer, Erickson, Beaudette & Tranel, PC
PO Box 7729
Missoula, MT 59807-7729
Telephone (406) 532-7800
Email: mail@bebtlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY,<br><br>Plaintiff,<br><br>-vs.-<br><br>DARYLL R. EHRET, EHRET LAND COMPANY, C & D CATTLE COMPANY, INC., and CHANCE MICHAEL EHRET, individually and as the Personal Representative of The Estate of T.E.<br><br>Defendants. | Cause No. **CV-24-126-BLG-TJC**<br>The Hon. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff National Farmers Union Property & Casualty Company ("NFU"), through its undersigned attorneys, brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, against Defendants Daryll R. Ehret, Ehret Land Company, C & D Cattle Company, Inc., and Chance Michael Ehret,

individually and as the Personal Representative of the Estate of T.E., alleging as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is an action for declaratory relief under 28 U.S.C. § 2201 related to insurance coverage for the lawsuit filed by Defendant Chance Michael Ehret, individually and as the Personal Representative of the Estate of T.E., (collectively referred to herein as "the Estate") for personal injury damages related to the conduct of Defendants Daryll R. Ehret, Ehret Land Company and C & D Cattle Company, Inc., on April 28, 2021. A copy of the Complaint filed by the Estate in the Montana Sixteenth Judicial District Court, Fallon County, is attached as **Exhibit A** (referred to herein as "the Complaint.")

2.      NFU seeks a declaratory judgment that it has no duty to defend or indemnify Daryll Ehret, Ehret Land Company or C & D Cattle Company, Inc., under a Personal Auto Policy issued by NFU to Daryll and Clinton Ehret with respect to the Complaint filed by the Estate.

3.      A declaratory judgment is appropriate in this matter because the Estate claims it is entitled to compensation for bodily injury/personal injury damages under the NFU policy, Daryll Ehret and Ehret Land Company claim they are entitled to defense and indemnity under the NFU policy, and NFU disputes that it has any duty to defend or indemnify Daryll Ehret or Ehret Land Company, or pay any sums to the Estate for its claims against Daryll Ehret and Ehret Land Company. Declaratory relief is also proper because NFU is providing Daryll Ehret and Ehret Land Company with a defense to the Estate's Complaint under a reservation of rights at the same time NFU seeks this declaratory judgment. *See* July 17, 2024 letter to Ehret Land Company and Feb. 26, 2024 letter to Daryll Ehret, attached as **Exhibit B**.

4.      C & D Cattle Company, Inc., is not making a claim that it is entitled to defense and indemnity under the NFU policy. However, C & D Cattle Company, Inc., is a proper party to this declaratory judgment action because it may be affected by a finding that NFU owes no duty to defend or indemnify Daryll Ehret or Ehret Land Company with regard to the claims made in the Complaint.

5.      Chance Michael Ehret, individually and as the Personal Representative of the Estate of T.E., are proper parties to this declaratory judgment action because they may be affected by a finding that NFU owes no duty to defend or indemnify Daryll Ehret or Ehret Land Company with regard to the claims made in the Complaint.

## THE PARTIES

6.      Plaintiff NFU is a corporation organized under the laws of the State of North Carolina, with its principal place of business in Winston-Salem, Forsyth County, North Carolina.

7.      Defendant Daryll Ehret is an individual residing in Fallon County, Montana, or at least was residing in Fallon County, Montana on April 28, 2021, when the events giving rise to this lawsuit occurred in Fallon County, Montana.

8.      Defendant Ehret Land Company is a corporation duly registered to conduct business in the State of Montana, or at least was registered to conduct business in Montana on April 28, 2021 when the events giving rise to this lawsuit occurred in Fallon County, Montana.

9.      Defendant C & D Cattle Company, Inc., is a Domestic Profit Corporation duly registered to conduct business in the State of Montana.

10.      Defendant Chance Michael Ehret is a resident of Fallon County, Montana, or at least was a resident of Fallon County, Montana on April 28,

2021 when the events giving rise to this lawsuit occurred in Fallon County, Montana.

11.    At all times relevant, decedent T.E. (a minor) was a resident of Fallon County, Montana. Defendant Chance Michael Ehret has been appointed as the Personal Representative of the Estate of T.E. in Cause No. DP 2023-11, Montana Sixteenth Judicial District Court, Fallon County, Montana.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

13.    This Court has personal jurisdiction over Defendant Daryll Ehret because she resides in Montana, and is thus found in Montana, and also because she claims insurance coverage for the Estate's Complaint against her, which relates to alleged acts and omissions she committed in Montana, under an insurance policy that NFU issued to her while she lived in Montana and for automobiles she owned, licensed and garaged in Montana.

14.    This Court has personal jurisdiction over Defendant Ehret Land Company  because it is registered to conduct business in the State of Montana, and also because Ehret Land Company asserts that the Estate's

Complaint against Ehret Land Company is covered by an insurance policy NFU issued to Clinton Ehret while he lived in Montana and for automobiles he owned, licensed and garaged in Montana.

15.    This Court has personal jurisdiction over Defendant C & D Cattle Company, Inc., because it is registered to conduct business in the State of Montana and it is thus found in Montana.

16.    This Court has personal jurisdiction over Defendants Chance Michael Ehret, individually and as the Personal Representative of the Estate of T.E., because each of them, at all times relevant herein, resided in Montana and are thus found in Montana.

17.    The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, because the Estate has made significant but as yet unquantified bodily injury/personal injury damage claims against Daryll Ehret and Ehret Land Company and the limit of the NFU insurance policy is $500,000 each person / $500,000 each accident. Moreover, NFU is defending Daryll Ehret and Ehret Land Company against the claims made in the Estate's Complaint under a reservation of rights and any attorneys' fees and defense costs paid on Daryll Ehret and Ehret Land Company's behalf further contribute to the amount in controversy.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within the District of Montana.

19.    Venue is proper in the Billings Division of this Court pursuant to Local Rule of Procedure 3.2(b) because the Defendants are residents of Fallon County, Montana, the loss or injury for which Defendants claim insurance coverage occurred in Fallon County, Montana, and Fallon County, Montana lies within the Billings Division of this Court.

20.    Title 28 U.S.C. § 2201 authorizes this Court to grant the relief requested by NFU.

## BACKGROUND

21.    Plaintiff NFU issued Montana Personal Auto Policy No. 2010550167 to Clinton Ehret for the policy period 01/01/2021 to 01-01-2022 (the "Auto Policy"). The Auto Policy has bodily injury liability limits of $500,00 Each Person / $500,000 Each Accident as well as Medical Payment limits of $5,000 Each Person / Each Accident. A certified copy of the Auto Policy is attached hereto as **Exhibit C**.

22.    Pertinent provisions of the NFU policy are recounted and applied below.

23.    On April 24, 2024, Chance Michael Ehret, individually and as the Personal Representative of the Estate of T.E., filed a Complaint and Demand for Jury Trial in the Montana Sixteen Judicial District Court, Fallon County, Cause No. DV-13-2024-0000010-WF. *See* Ex. A attached. The Complaint names Darryl R. Ehret, C & D Cattle Company, Inc., Ehret Land Company and Does I-V as Defendants.

24.    The Complaint includes the following allegations concerning "Facts Common to All Counts:"

16.  Defendant Daryll R. Ehret took T.E. with her as a passenger on the ATV, while she was completing tasks and or conducting business on behalf of one or more Defendants, including checking fences.

17.  Upon information and belief, Defendant Daryll R. Ehret was driving a 2012 Polaris Sportsman 400 H.O. ATV ("the ATV").

18.  The ATV was a single passenger vehicle with an age restriction of 16 years.

19.  The ATVE came with repeated manufacturer's safety warnings in the manual with advised to "NEVER CARRY PASSENGERS."

20.  The ATV came with manufacturer's safety warnings in the manual advising that the vehicle was as "ADULT VEHICLE ONLY" and that "Operation was prohibited for anyone under 16 years of age."

21.  The ATV came with manufacturer's safety warnings in the manual advising to "ALWAYS USE AN APPROVED HELMET AND PROTECTIVE GEAR."

22.  The ATV had visible warning stickers conspicuously placed on the ATV that advised to "NEVER CARRY PASSENGERS."

23.  The ATV had visible warning stickers conspicuously placed on the ATV that advised to "ALWAYS USE AN APPROVED HELMET AND PROTECTIVE GEAR."

24.  The ATV had visible warning stickers conspicuously placed on the ATV that advised the ATV was an "ADULT VEHICLE ONLY" and that Operation was prohibited for anyone under 16 years of age.

25.  Upon information and belief, the ATV was owned or provided by one of the Defendants for purposes of conducting tasks or duties on behalf of one or more of the Defendants.

26.  Despite the above-mentioned warnings, Defendant Daryll R. Ehret took 4-year-old T.E. with her as a passenger on the ATV.

27.  T.E. was not wearing the manufacturer recommended safety gear at the time of the accident, nor was he wearing a helmet.

28.  At approximately 1630-1645 hours on April 28, 2021, Defendant Daryll R. Ehret was driving the ATV with T.E. as a passenger and approached a closed gate.

29.  Defendant Daryll R. Ehret left T.E. unattended on the ATV while it was running and in gear, and got off the ATV to manually open the gate.

30.  After Defendant Ehret got off the ATV and left T.E. unattended, T.E. grabbed the handlebars at which time the ATV lurched forward.

31.  Upon information and belief, T.E. gripped the thumb throttle when he grabbed the handlebars, which caused the ATV to lurch forward as it was still running and left in gear.

32.  The ATV lurched forward and ultimately flipped over, landing on T.E.

33.  As a result of the foregoing, T.E. was crushed and suffered injuries that eventually proved to be fatal.

*See* Ex. A.

25.  The Complaint includes the following cause of action:

### Count I – Negligence Against Darryl R. Ehret

\* \* \*

48.  Defendant Daryll R. Ehret had a general duty of care to operate the ATV vehicle in a safe and prudent manner.

49.  Defendant Daryll R. Ehret had a general duty of care to operate the ATV vehicle in accordance with the ATV owner's manual, written warnings, and warning stickers on the ATV.

\* \* \*

52.  Defendant's negligence was the cause in fact and proximate cause of T.E.'s death and the pain and suffering he endured prior to his death.

*See* Ex. A.

26.    The Complaint alleges causes of action against Ehret Land Company for "Respondeat Superior" (Count V), "Negligent Entrustment" (Count VI) and "Negligent Hiring, Training and Supervision" (Count IX). *See* Ex. A.

26.    The Complaint alleges causes of action against C & D Cattle Company for "Respondeat Superior" (Count IV), "Negligent Entrustment" (Count VII), and "Negligent Hiring, Training and Supervision" (Count VIII). *Id.*

## THE NFU PERSONAL AUTO POLICY

27.    The Liability Coverage Insuring Agreement for the Auto Policy provides:

A.      Subject to the limit of liability shown on the **Declarations Page,** if **you** pay **us** the premium for Liability Coverage, **we** will pay compensatory damages for which an **insured** is legally liable due to **bodily injury** or **property damage** caused by an **accident** that arises out of the **ownership,** maintenance or use of an **auto, farm vehicle** or **utility vehicle** covered under this PART A. Damages include prejudgment interest awarded against the **insured** subject to **our** limit of liability for this PART A. **We** will not pay for **punitive damages.**

Ex. C, at page 49.

28.    The Liability Coverage includes the following Additional

Definition – Part A:

**"Insured",** as used in this PART A, means:

1.      **You** or any **family member** for:

a. Operation or use of any **auto, farm vehicle** or **utility vehicle** with permission from its **owner;** or

b. The **ownership,** maintenance, or use of a **covered auto.**

2.      Any person using or **occupying** a **covered auto** with **your** permission.

3.      For the use of a **covered auto,** any person or organization, but only with respect to legal liability for acts or omissions of a person for whom coverage is afforded under this PART A.

4.      With respect to the use of an **auto, farm vehicle** or **utility vehicle,** other than a **covered auto,** by **you** or a **family member,** any person or organization to the extent of legal liability within the limit of liability imputed due to the negligence of **you** or a **family member** for whom coverage is afforded under this PART A. This provision applies only if the person or organization does not **own** or hire the **auto.**

Ex. C, at page 49.

29.    The "Definitions" section of the Auto Policy defines "auto" as

follows:

D.      **"Auto"** means a **private passenger auto, farm vehicle,** or **utility vehicle** designed for operation mainly on public roads.

An **auto** does not include any type of all-terrain or quad vehicle, dune buggy, go-cart, or golf cart or any vehicle while located for use as a dwelling place.

Ex. C, at page 44.

30.    The "Definitions" section of the Auto Policy defines "covered

auto" as follows:

H.      **"Covered auto"** means:

1.      Any **auto, farm vehicle** or **utility vehicle** shown on **your Declarations Page**, unless **you** have asked **us** to delete that **auto, farm vehicle** or **utility vehicle** from the Policy;

2.      A **newly acquired auto;**

3.      **Your trailer;**

4.  Any **auto** not **owned** by **you** or a **family member**
    while used on a temporary basis as a substitute for any
    other **auto** described in this definition which is out of
    normal use because of its:
    a.  Breakdown;
    b.  Repair;
    c.  Servicing;
    d.  **Loss**; or
    e.  Destruction.

    Coverage for a temporary substitute **auto** shall not exceed
    sixty (60) days; or

5.  Any **farm vehicle you** do not **own** while leased under a
    **short term contract,** listed on the **Declarations Page**
    and used in the occupation of **farming.**

    No coverage will apply with respect to the lessor while the
    **farm auto** leased under a **short term contract** is in
    the care, custody, or control of the lessor or is loaned,
    rented or leased by the lessor to any individual or firm
    other than **you**.

Ex. C, at page 45.

31.  The "Definitions" section of the Auto Policy defines "farm

vehicle" as follows:

Q.  **"Farm vehicle"** means a motor vehicle of a truck type that is
    used for **farming** and no other **business** purposes. **Farm
    vehicle** does not include **farming** equipment, such as mobile
    equipment, farm tractors or farming combines.

Ex. C, at page 46.

32.    The "Definitions" section of the Auto Policy defines "Private passenger auto" as follows:

AA.    **"Private passenger auto"** means a land motor vehicle:

1.    Of the private passenger, pickup body, or cargo van type;

2.    Designed for operation principally upon public roads;

3.    With at least four wheels; and

4.    With a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

Ex. C, at page 46.

33.    The "Definitions" section of the Auto Policy defines "Utility vehicle" as follows:

MM.    **"Utility vehicle"** means a motor vehicle other than a **farm vehicle,** with a Gross Vehicle Weight less than 15,000 pounds of the pick-up, panel, or van body type that is not used in any **business** other than farming or ranching.

Ex. C, at page 47.

34.    The Liability Coverage Insuring Agreement for the Auto Policy contains certain exclusions, which include the following:

B.    **We** do not provide Liability Coverage for, nor do **we** have a duty to defend, any **insured** for **bodily injury** or **property damage** arising out of the **ownership,** maintenance, or use of:

1.  Any vehicle, other than a **farm vehicle,** which has less than four wheels or which is designed for use mainly off public roads such as any type of all-terrain vehicle or quad vehicle, dune buggy, go-cart, or golf cart. This exclusion does not apply to **your trailer.**

2.  Any vehicle, other than a **covered auto,** that is:

    a.  **Owned** by **you;** or

    b.  Furnished or available for **your** regular use.

Ex. C, at page 51.

35.    The Declarations Page for the Auto Policy identified Clinton Ehret and Daryll Ehret as the "Named Insured." Ex. C, at page 32.

36.    The Declarations Page for the Auto Policy lists the following: a 1997 Chevrolet Suburban; a 2002 Chevrolet Silverado; a 2004 Chevrolet Suburban; a 1994 Chevrolet GMT-400; a 1994 Titan Horse (trailer); a 2003 Chevrolet Silverado; a 1974 Ford Truck; a 1984 GMC ME6500 C; and a 1976 GMC 6500. Ex. C, at pages 32 - 34.

37.    The Applicant's Statement for the Auto Policy states that the Primary Named Insured is not an Estate, Receivership, Corporation or Partnership:

Is Primary Named Insured an Estate, Receivership, Corporation or Partnership?

NO.

Ex. C, at page 14.

38.    The Certificate of Title for the ATV lists Ehret Land Company as the owner of the ATV. *See* **Exhibit D,** attached.

39.    Because there is no coverage for the Estate's claims, NFU has no duty to defend or indemnify Daryll R. Ehret, Ehret Land Company or C & D Cattle Company against the Estate's Complaint, and NFU is entitled to a declaratory judgment accordingly.

## THE 2012 POLARIS SPORTSMAN 400 H.O. ATV OWNER'S MANUAL

40.    The Owner's Manual for Maintenance and Safety for the ATV provides the following warning:

### WARNING

NEVER USE ON PUBLIC ROADS

NEVER operate:

* * *

    • On public roads – a collision can occur with another vehicle.

See ATV Owner's Manual, pg. 4, attached as **Exhibit E**.

41.    The Owner's Manual for Maintenance and Safety for the ATV provides the following SAFETY statement:

**Safety Training**
ATV safety training is a top priority for POLARIS. POLARIS strongly encourages you and any family members who will be riding the ATV to take a training course.

* * *

A POLARIS ATV is an off-road vehicle. Familiarize yourself with all laws and regulations concerning the operation of this vehicle in your area.

Ex. E, pg. 11.

42.    The Owner's Manual for Maintenance and Safety for the ATV

provides the following Safety Warnings:

### Safety Warnings Operating on Pavement

Operating an ATV on paved surfaces (including sidewalks, paths, parking lots and driveways) may adversely affect the handling of the ATV and could result in loss of control and accident or overturn.

Avoid operating the ATV on pavement. ATV tires are designed for off-road use. If it's unavoidable, travel slowly and avoid sudden turns or stops.

### Operating on Public Roads

Operating this ATV on public streets, roads or highways could result in a collision with another vehicle.

Never operate the ATV on any public street, road or highway, including dirt and gravel roads. In many states it's unlawful to operate ATVs on public streets, roads and highways.

Ex. E, pg. 17.

43.    The Owner's Manual for Maintenance and Safety for the ATV

states that there are Safety Decals placed on the ATV, which include the

following:

**General Warning**

**WARNING**

Improper ATV use can result in SEVERE INJURY or DEATH

ALWAYS USE AN APPROVED HELMET AND PROTECTIVE GEAR

NEVER USE ON PUBLIC ROADS

NEVER CARRY PASSENGERS

NEVER USE WITH DRUGS OR ALCOHOL

**NEVER** operate:

• without proper training or instruction

• at speeds too fast for your skills or the conditions

• on public roads - a collision can occur with another vehicle

• with a passenger - passengers affect balance and steering and increase risk of losing control

Ex. E, pg. 25.

44.    The Owner's Manual for Maintenance and Safety for the ATV

provides the following Safe Operation Practices:

**Safe Operation Practices**

\* \* \*

6. Operate this vehicle off-road only. Never operate the vehicle on pavement or on any public street, road or highway, including dirt and gravel roads.

Ex. E, pg. 47.

## COUNT I – DECLARATORY JUDGMENT
## UNDER THE AUTO POLICY

45.    NFU incorporates the preceding allegations in paragraphs 1 through 41 as if set forth in full herein.

46.    The Liability Coverage of the Auto Policy is not applicable because the Estate's Complaint does not seek damages for bodily injury or property damage caused by an accident that arises out of the ownership, maintenance or use of an **auto, farm vehicle** or **utility vehicle** as those terms are defined under the Auto Policy.

47.    The Liability Coverage of the Auto Policy is not applicable because the ATV is not listed as one of the "insured personal autos" on the Auto Policy Declarations page.

48.    Even if the Estate's Complaint did seek damages for bodily injury or property damages caused by an "accident" that arises out of the ownership, maintenance or use of an **auto, farm vehicle** or **utility vehicle**, which it does not, Liability Coverage is not available under the Auto Policy because the ATV is not a "**farm vehicle**" as that term is defined under the Auto Policy and because the ATV is designed for use mainly off public roads.

49.    Even if the Estate's Complaint did seek damages for bodily injury or property damages caused by an "accident" that arises out of the ownership, maintenance or use of an **auto, farm vehicle** or **utility vehicle**, which it does not, Liability Coverage is not available under the Auto Policy because the ATV is not a "**covered auto**" as that term is defined under the Auto Policy and because the ATV is furnished or available for regular use by Daryll Ehret.

50.    The Auto Policy does not provide coverage for Ehret Land Company because Ehret Land Company is not listed as a Named Insured on the Auto Policy and Ehret Land Company is not an "**insured**" or "**Named insured**" as those terms are defined under the Auto Policy.

51.    The Auto Policy does not provide coverage for C & D Cattle Company because C & D Cattle Company is not listed as a Named Insured on the Auto Policy and C & D Cattle Company is not an "**insured**" or "**Named insured**" as those terms are defined under the Auto Policy.

52.    The Auto Policy does not provide coverage for Ehret Land Company because the Auto Policy application states that the Primary Named Insured is not an Estate, Receivership, Corporation or Partnership.

53.    The Auto Policy does not provide coverage for C & D Cattle Company because the Auto Policy application states that the Primary Named Insured is not an Estate, Receivership, Corporation or Partnership.

54.    Accordingly, for those reasons, and for any other reasons available under the Auto Policy and Montana law, NFU has no duty to defend or indemnify Daryll R. Ehret, Ehret Land Company or C & D Cattle Company under the Auto Policy for claims made in the Estate's Complaint.

WHEREFORE, NFU requests that this Court enter Judgment against Defendants as follows:

A.    Declaring that NFU does not owe a duty to defend or indemnify Daryll Ehret, Ehret Land Company or C & D Cattle Company in relation to the Estate's Complaint;

B.    Declaring that Chance Michael Ehret, individually and as the Personal Representative of the Estate of T.E., may not collect any judgment or settlement from NFU;

C.    Ordering that Defendants pay NFU its reasonable costs incurred in prosecuting this lawsuit; and

D.    Providing further relief the Court deems necessary and just.

DATED September 4, 2024.

/s/ Paul N. Tranel
Paul N. Tranel
BOHYER, ERICKSON, BEAUDETTE &
TRANEL, PC
*Attorneys for National Farmers Union*